UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUZY A. MARTINEZ; SKM, by her natural mother and guardian ad litem, SUZY A. MARTINEZ; AM, by his natural mother and guardian ad litem, SUZY A. MARTINEZ; and CM, by her natural mother and guardian ad litem, SUZY A. MARTINEZ,<br><br>　　　　　Plaintiffs,<br>　　v.<br><br>CALIFORNIA INVESTORS XII, a California limited partnership; FPI MANAGEMENT, INC., a California Corporation; and EVA DIAZ,<br><br>　　　　　Defendants. | CASE NO. CV 05-7608-JTL<br><br>RULING REGARDING DEFENDANT FPI MANAGEMENT, INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS |

**INTRODUCTION**

On October 26, 2005, Suzy Martinez and her three minor children (collectively "plaintiffs" or "Martinez family") filed suit against California Investors XII, FPI Management, Inc., and Eva Diaz (collectively "defendants") for violations of Sections 3604(b) and 3617 of the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3604(b) and 3617; Section 1982 of the Civil Rights Act of 1866, 42 U.S.C. § 1982; Government Code Sections 12955(a) and 12955.7 of the California Fair Employment and Housing Act ("FEHA"); and the California Unruh Civil Rights Act ("Unruh Act"), Civil Code Section 51. Defendants are the owners of the apartment complex where the

1 Martinez family lived, the managing company of the apartment complex, and the manager,
2 respectively. Defendant FPI Management Co., Inc. ("defendant") has moved for judgment on
3 the pleadings pursuant to Federal Rules of Civil Procedure 12(c) ("Motion"). Plaintiffs filed an
4 opposition to the Motion ("Opposition") and, thereafter, defendant filed a timely reply ("Reply")
5 to the Opposition. The Court, having read and considered the pleadings filed in support of and
6 in opposition to defendants' Motion, as well as counsel's arguments, issues the following ruling:

## PLAINTIFFS' ALLEGATIONS

Plaintiffs allege that in September 2003, they moved into Meridian Apartments. Almost immediately thereafter, plaintiffs contend that their white and Latino neighbors began harassing and intimidating them. (Complaint at ¶ 2). Over the course of several months, they endured a pattern of racially motivated harassment by their neighbors that included persistent racial slurs, vandalism of their apartment and car, throwing of rocks, beer cans, and other matter at plaintiffs and their apartment, and threats of violence. (Complaint at ¶ 1). Plaintiffs further allege that they reported the harassment to the manager of the apartment building, but that the manager did not take immediate, effective action to prevent the harassment.[1] (Complaint at ¶¶ 1 and 2; see also Final Pretrial Conference Order at 2).

///
///

---

[1] Claim One alleges a claim for relief under the Fair Housing Act, 42 U.S.C. Sections 3604(a), 3604(b), and 3617; Claim Two asserts a claim under the Civil Rights Act of 1866, 42 U.S.C. Section 1982; Claim Three asserts a claim under the California Fair Employment and Housing Act (FEHA), California Government Code Sections 12927(c), 12955(a), 12955(k), and 12955.7; Claim Four asserts a claim under the California Unruh Civil Rights Act, California Civil Code, Section 51 et seq. ("Unruh Act"); Claim Five alleges defendants engaged in Unfair Business Practices in violation of California Business and Professions Code Section 17200 et seq.; and Claims Six and Seven assert claims based on negligent supervision and general negligence.
In the Final Pretrial Conference Order filed April 12, 2007, plaintiffs stated that they would not pursue their claims under the FHA, the Civil Rights Act of 1866, the FEHA, and the Unruh Civil Rights Act based on the theory that plaintiffs had unequal access to facilities at Meridian Apartments based on race or national origin. Plaintiffs also stated that they would not pursue their negligence claim. (See Final Pretrial Conference Order at 6).

**STANDARD OF REVIEW**

Rule 12(c) of the Federal Rules of Civil Procedure provides: "After the pleadings are closed, but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  A Rule 12(c) motion challenges the legal sufficiency of the opposing party's pleadings.  The standard applied on a Rule 12(c) motion is essentially the same as that applied on Rule 12(b)(6) motions: i.e., judgment on the pleadings is appropriate when, even if all material facts in the pleading under attack are true, the moving party is entitled to judgment as a matter of law.  Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1550 (9th Cir. 1989).  All allegations of fact by the party opposing the motion are accepted as true, and construed in the light most favorable to that party.  Gen. Conference Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church, 887 F.2d 228, 230 (9th Cir. 1989).  As a result, a defendant is not entitled to judgment on the pleadings if the complaint raises issues of fact which, if proved, would support recovery.  Likewise, a plaintiff is not entitled to judgment on the pleadings when the answer raises issues of fact or an affirmative defense which, if proved, would defeat the plaintiff's recovery.  Id.

**DISCUSSION**

**I.   FAILURE TO STATE A CLAIM UNDER THE FAIR HOUSING ACT**

Plaintiffs allege that defendants' failure to take immediate, effective action to prevent the harassment of plaintiffs by their neighbors violates Sections 3604(b) and 3617 of the FHA.[2]  In its Motion, defendant FPI Management Co., Inc. asserts that plaintiffs' claims under the FHA

---

[2]  Section 3604(b) of the FHA states that it shall be unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin."

Section 3617 of the FHA states that "[i]t shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section [3603, 3604, 3605 or 3606 of this title.]"

must be dismissed on two independent grounds: (1) first, the FHA does not apply to claims that arise after the acquisition of property; and (2) second, even if the FHA applies to "post-acquisition" claims, plaintiffs fail to allege facts sufficient to set forth claims under the FHA.

### A.     Applicability of FHA to Post-Acquisition Claims

Defendant first contends that the language of Sections 3604(b) and 3617 of the FHA does not allow plaintiffs to sue for harassment "post-acquisition" of the property. (See Motion at 4-5). In support of its argument, defendant relies primarily on Halprin v. Prairie Single Family Homes of Dearborn Park Ass'n, 388 F.3d 327 (7th Cir. 2004). In that case, the co-owners of a home located in a housing subdivision filed a complaint against several defendants, including the subdivision's homeowners' association and a resident of the subdivision who was also a member and officer of the homeowners' association. Id. at 328. The complaint alleged a pattern of religiously motivated harassment based upon plaintiff's Jewish faith, which included the alleged vandalism of the plaintiffs' home; the defendants' alteration and destruction of records in an attempt to conceal the association president's threats to make an example of the plaintiffs; the defendants' threats to force the plaintiffs to sell their home; and the defendants' enactment of  rules restricting the plaintiffs' lawful use of their property. Id.

The plaintiffs in Halprin alleged that the defendants' actions amounted to violations of Sections 3604 and 3617. The district court, however, disagreed and dismissed each of these claims. On appeal, the Seventh Circuit Court of Appeals affirmed the dismissal of the plaintiffs' Section 3604(a) and (b) claims, stating, "Our plaintiffs . . . are complaining not about being prevented from acquiring property but about being harassed by other property owners." Id. at 329. The court of appeals stated that the FHA contained no hint either in its language or its legislative history of a concern with anything but access to housing. Id. Because the plaintiffs were not prevented from buying and moving into their home, the court concluded that "it is difficult to see how they can have been interfered with in the enjoyment of any right conferred on them by Section 3604." Id. Thus, insofar as it relied on Section 3604, the court of appeals affirmed the dismissal of the complaint on the ground that Section 3604 related to pre-acquisition conduct. See Halprin, 388 F.3d at 329 ("The Fair Housing Act contains no hint

1    either in its language or its legislative history of a concern with anything but <u>access</u> to housing").

2    The Seventh Circuit, however, reversed the district court's dismissal of the Section 3617
3    claim. <u>Halprin</u>, 388 F.3d at 330.  The court of appeals observed that although the Section 3617
4    claim seemed doomed because it was linked to Section 3604, a regulation that had been
5    promulgated by the Department of Housing and Urban Development ("HUD"), 24 C.F.R. §
6    100.400(c)(2), "cuts section 3617 loose from Section 3604" by expanding its reach to protect
7    the prospective enjoyment of previously acquired property.  <u>Id.</u>  Interference with "enjoyment
8    of a dwelling," which the regulation forbids, is something that can take place after the dwelling
9    has been acquired.  <u>Id.</u>  Thus, in <u>Halprin</u>, where the regulation was unchallenged, the court
10   noted that the remaining question was whether the conduct alleged in the complaint amounts
11   to "threatening, intimidating, or interfering" within the meaning of Section 3617 and the
12   regulation.  <u>Id.</u>

13   In this case, defendant contends that plaintiffs have failed to assert a claim under
14   Section 3617 because plaintiffs do not allege that defendants "threatened, intimidated, or
15   interfered" with plaintiffs' "enjoyment of a dwelling."  Instead, the premise of plaintiffs' claim is
16   defendants' failure to act.  Thus, defendant argues that plaintiffs' sole claim based on
17   harassment under Section 3604(b) should be dismissed.

18   There is no Supreme Court or Ninth Circuit authority that specifically addresses the
19   applicability of Sections 3604 and 3617 of the FHA to post-acquisition claims of harassment.
20   Nevertheless, the courts have held that the terms of the FHA should be construed generously
21   in order to promote the replacement of segregated ghettos with "truly integrated and balanced
22   living patterns."  <u>United States v. Koch</u>, 352 F. Supp. 2d 970, 976 (D. Neb. 2004) (quoting
23   <u>Trafficante v. Metro. Life Ins. Co.</u>, 409 U.S. 205, 211-12 (1972)); <u>see</u> <u>also</u> <u>Holly v. Crank</u>, 386
24   F.3d 1248, 1256 (9th Cir. 2004), <u>rev'd on other grounds</u>, 400 F.3d 667 (9th Cir. 2005) (noting
25   that "the FHA must be given a 'generous construction' to carry out a 'policy that Congress
26   considered to be of the highest priority.'"); <u>United States v. California Mobile Home Park Mgmt.</u>
27   <u>Co.</u>, 29 F.3d 1413, 1416 (9th Cir. 1994) (same);  <u>Housing Rights Center v. Donald Sterling</u>
28   <u>Corp.</u>, 274 F. Supp. 2d 1129, 1137 (C.D. Cal. 2003) (The Fair Housing Act must be interpreted

1  broadly to effectuate its purposes, and the statute represents a "strong national commitment
2  to promote integrated housing." (Citations omitted)).

3        The district court's decision in Koch, 352 F. Supp. 2d at 975-76, supports this broader
4  interpretation of the FHA.  In rejecting the defendant's reliance on Halprin, the court in Koch
5  observed that the district court in Halprin interpreted the terms of Section 3604(b) narrowly to
6  exclude post-acquisition acts of discrimination, notwithstanding the breadth of authority that
7  suggested the terms of the FHA should be construed generously in order to promote the
8  replacement of segregated ghettos with "truly integrated and balanced living patterns." Koch,
9  352 F. Supp. at 976.  The court, moreover, stated that in its view, "it [was] difficult to imagine
10 a privilege that flows more naturally from the purchase or rental of a dwelling than the privilege
11 of residing therein; therefore the Fair Housing Act should be (and has been) read to permit the
12 enjoyment of this privilege without discriminatory harassment." Id.

13       This Court finds Koch persuasive, as well as those cases that espouse the view that the
14 language of the FHA should be broadly interpreted to encourage integrated housing.  As such,
15 this Court declines to apply the more narrow reading of the FHA to this case.  See, e.g.,
16 Housing Rights Center, 274 F. Supp. 2d at 1137; Holly, 386 F.3d at 1256; Gilligan v. Jamco
17 Dev. Corp., 108 F.3d 246, 249 (9th Cir. 1997) (quoting Trafficante, 409 U.S. at 209-12).  As the
18 Court in Koch noted, at least one provision of the FHA deals expressly with problems that arise
19 after home ownership has been secured.  Koch, 352 F. Supp. 2d at 977 (citing 42 U.S.C. §
20 3605).  Moreover, the policy statements that Congress issued do not suggest that Congress
21 did not intend to include "post-possession" problems, such as harassment or expulsion, within
22 the scope of the FHA.  Id.

23       In Halprin, the case on which defendant relies, the plaintiffs were homeowners, and not
24 renters.  Here, plaintiffs were renters.  There is a significant distinction between sale and rental.
25 A sale of real property is a singular event, something concluded at a determinable point in time.
26 Richards v. Bono, 2005 U.S. Dist. LEXIS 43585, *11 (M.D. Fla. 2005).  On the other hand, a
27 rental arrangement involves an ongoing relationship between the landlord and tenant in which
28 the landlord typically retains various powers.  Richards, 2005 U.S. Dist. LEXIS 43585, at *11.

1 As the Court in Richards concluded, "[t]o hold that § 3604(b) does not reach post-acquisition
2 discrimination in the rental context would be inconsistent with the spirit of the Fair Housing Act,
3 contrary to the Act's 'broad and inclusive' language, and at odds with a 'generous construction'
4 of its provisions." Richards, 2005 U.S. Dist. LEXIS 43585, at *12. Defendant also appears to
5 rely on Halprin for the proposition that a violation of Section 3617 cannot lie absent a violation
6 of Sections 3603, 3604, 3605, or 3607. The Ninth Circuit, however, has found that Section
7 3617 may be violated when "no discriminatory housing practice may have occurred at all."
8 United States v. City of Hayward, 36 F.3d 832, 836 (9th Cir. 1994). Furthermore, as with
9 Section 3604(b), a broad interpretation of Section 3617 that prohibits unlawful discriminatory
10 conduct after a person has taken possession of a dwelling is consistent with those cases that
11 recognize post-acquisition harassment claims under the FHA. The Halprin court declined to
12 address the validity of 24 C.F.R. § 100.400(c)(2), which "cuts section 3617 loose from section
13 3604, contrary to the language of section 3617." Halprin, 388 F.3d at 330. In contrast, the
14 court in Koch, 352 F. Supp. 2d at 980, found that, after considering the FHA, its stated purpose,
15 and its legislative history, 24 C.F.R. § 100.400(c)(2) constitutes a reasonable interpretation of
16 section 3617. There is no indication that the regulation is contrary to Congress's intent in
17 enacting the FHA. Thus, the Court in Koch found that the regulation provided "a vehicle for the
18 aggrieved persons' 'post-residence acquisition' claims to proceed under section 3617." Koch,
19 352 F. Supp. 2d at 980. This Court concurs with the Koch court's reasoning and, accordingly,
20 finds that a section 3617 claim may involve post-acquisition conduct.

21 Based upon the foregoing reasons, the Court declines to dismiss plaintiffs' claims under
22 the Fair Housing Act on the ground that the claims relate to events that took place after the
23 initial rental of their apartment.[3]

---

[3] Several other courts, although not specifically discussing the issue, have recognized claims under the FHA that arose post-acquisition. See, e.g., Neudecker v. Boisclair Corp., 351 F.3d 361, 364 (8th Cir. 2003) (permitting claim based on harassment that occurred during the plaintiff's twenty-three year tenancy at the defendant's apartment building); DiCenso v. Cisneros, 96 F.3d 1004, 1008 (7th Cir. 1996) (recognizing claim under the FHA where sexual harassment causes a hostile housing environment); Honce v. Vigil, 1 F.3d 1085, 1088-90 (10th Cir. 1993) (same); Beliveau v. Caras, 873 F. Supp. 1393 (C.D. Cal. 1995) (same); Burgess v. United States, 1997 U.S.

7

**B.      Failure to State a Claim Under the Fair Housing Act**

Alternatively, defendant contends that, even if the FHA applies to "post-acquisition" claims, it is entitled to judgment on the pleadings because plaintiffs have failed to state a claim under either Sections 3604 or 3617 of the FHA. Specifically, defendant argues that even if the FHA applies to "post-acquisition" claims, plaintiffs have failed to allege a claim under Section 3604(b) because plaintiffs have not alleged that defendant intentionally discriminated against plaintiffs. Additionally, defendant contends that plaintiffs have failed to allege a claim under Section 3617 because they do not allege that defendant "threatened, intimidated or interfered" with the enjoyment of a dwelling. The parties agree that there is no Ninth Circuit or Supreme Court authority that directly addresses whether a landlord or management company can be held liable for harassment of a tenant by another tenant. Plaintiffs contend, however, that because the Supreme Court and the Ninth Circuit have applied Title VII law to interpret the scope of the FHA, a hostile housing environment caused by severe or pervasive harassment is actionable under the FHA. (Opposition at 9). In particular, plaintiffs claim that defendants' ratification of a pattern of racially-based harassment and intimidation caused by a co-tenant violates Sections 3604(b) and 3617 of the FHA.

Plaintiffs rely on several cases in support of their argument. See Neudecker, 351 F.3d at 364; DiCenso, 96 F.3d at 1008 (7th Cir. 1996); Honce, 1 F.3d at 1090; and Beliveau, 873 F. Supp. at 1396-97. In Neudecker, the plaintiff alleged that other tenants constantly harassed him based on his disability, that he repeatedly complained to management about the harassment to no avail, and that he ultimately had to move from the apartment. 351 F.3d at 362-63. The Eighth Circuit Court of Appeals concluded that the plaintiff had sufficiently alleged a claim for disability harassment under the FHA. The court of appeals noted that although Neudecker involved disability harassment in housing, and not the workplace, some federal courts have permitted claims under the FHA when sexual harassment caused a hostile housing

---

Dist. LEXIS 6015, *16 (N.D. Cal. 1997) (same); Egan v. Schmock, 93 F. Supp. 2d 1090 (N.D. Cal. 2000) (recognizing Section 3617 claim based on discriminatory conduct designed to drive an individual out of his or her home).

1  environment. Neudecker, 351 F.3d at 364. Moreover, the court noted that other federal courts had permitted claims under the FHA when sexual harassment caused a hostile housing environment. Id. (citing to Cisneros, 96 F.3d at 1008; Honce, 1 F.3d at 1088-90; Williams v. Poretsky Mgmt, Inc., 955 F. Supp. 490, 495-96 (D. Md. 1996)). And, while the plaintiff in Neudecker did not allege that the management company's agents themselves harassed him, he alleged that the tenants constantly harassed and threatened him based on his disability; that he repeatedly complained to the property management company; and that he ultimately moved from his apartment out of concerns for his health stemming from the harassment. Id. at 365. On remand, the court held that to prevail on his hostile housing environment claim, the plaintiff must establish that: (1) he is a qualified individual with a disability; (2) he was subject to unwelcome harassment; (3) the harassment was based on his disability; (4) the harassment was sufficiently severe or pervasive to deprive him of his right to enjoy his home; and (5) the management company knew or should have known of the harassment in question and failed to take prompt remedial action.

Both Title VII and Title VIII were designed to eradicate the effects of bias and prejudice. Their purposes are, clearly, the same; only their field of operation differs. Beliveau v. Caras, 873 F. Supp. 1393, 1396 (C.D. Cal. 1995). Although no courts have specifically found that a tenant-on-tenant hostile environment claim exists under the FHA, the text of the FHA addresses issues beyond simple access to housing, including providing protection from intimidation, coercion, and threats. See Aric Short, Post-Acquisition Harassment and the Scope of the Fair Housing Act, 58 Ala. L. Rev. 203, 244 (2006). "Protecting minority occupation of housing is fully consistent with congressional motivations underlying the FHA. Furthermore, nowhere in the FHA's legislative history is harassment protection explicitly excluded from coverage. . . Similarities in the statutes' substantive provisions and broad, remedial scope further support the recognition of a parallel claim in the housing context." Id. at 245; see, e.g., King v. Metcalf 56 Home Ass'n, Inc., 385 F. Supp. 2d 1137, 1145 (D. Kan. 2005) (plaintiff's section 3617 claim against homeowners' association does not depend upon degree of contact between the aggrieved resident and the association).

Section 3604(b) of the FHA provides that "it shall be unlawful . . . to discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race. . ." 42 U.S.C. § 3604(b). In order to establish a claim under Section 3604(b), plaintiffs must be able to show that they are persons whose rights are protected under the FHA, and that defendants engaged in discriminatory conduct causing plaintiffs distinct and palpable injury. Harris v. Itzhaki, 183 F.3d 1043, 1051 (9th Cir. 1999).[4]

Section 3617 makes it unlawful "to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other persons in the exercise of enjoyment of any right granted by section [3603, 3604, 3605, and 3606 of this title.]" 42 U.S.C. § 3617.

Defendant argues that plaintiffs' claim of harassment by other tenants does not amount to a ratification of racial harassment by third parties over whom defendants had no control. Defendants rely on Housing Rights Center v. Sterling, 404 F. Supp. 2d 1179 (C.D. Cal. 2004) and Egan v. Schmock, 93 F. Supp. 2d 1090 (N.D. Cal. 2000). But neither of these cases constitutes persuasive authority for the argument that defendant makes. In Housing Rights Center, the district court denied defendants' motion for summary judgment as to plaintiffs' Section 3604(a) and (b) claims. Housing Rights Center, 404 F. Supp. 2d at 1191-93. The court noted that "Title VII discrimination analysis applies to Fair Housing Act discrimination claims, permitting a plaintiff to establish an FHA discrimination claim where he or she can demonstrate disparate treatment or disparate impact." Id. at 1189 (citing Harris, 183 F.3d at 1051-52). To bring a claim for disparate treatment or disparate impact, the plaintiff must establish a prima facie case by showing: "(1) plaintiff's rights are protected under the FHA; and (2) as a result of

---

[4] This claim can be established under either a theory of disparate treatment or disparate impact. Harris, 183 F.3d at 1051. A disparate treatment claim requires proof that members of a protected group, in this case African-American persons, were treated differently from, and less favorably than, other persons. Gavin v. Spring Ridge Conservancy, Inc., 934 F. Supp. 685, 687 (D. Md. 1995), aff'd, 92 F.3d 1178 (4th Cir. 1996). The subjective belief of a tenant that the defendant acted with the intention of discriminating or retaliating is insufficient to show intentional discriminatory animus. Id.

the defendant's discriminatory conduct, plaintiff has suffered a distinct and palpable injury." Harris, 183 F.3d at 1051.  To state a claim under Section 3604(b), "a plaintiff must show that he or she was subject to different 'terms, conditions, or privileges because of a protected status.'" Housing Rights Center, 404 F. Supp. 2d at 1192.  Thus, the FHA not only demands that tenants be able to secure an apartment on a nondiscriminatory basis, but also "guarantees their right to equal treatment once they have become residents of that housing."  Id. (citing Inland Mediation Board v. City of Pomona, 158 F. Supp. 2d 1120, 1148 (C.D. Cal. 2001).  The court went on to note that Section 3604(b) claims generally have been sustained for actions such as monitoring conduct of Hispanic tenants and making derogatory remarks toward Hispanics, restricting families with children from using a building's swimming pool or laundry facility, or providing disparate "rental charges, security deposits and the terms of lease" based on tenants' race, color, or national origin." Id.  The court did not find, however, that this list was exhaustive.

In Egan, 93 F. Supp. 2d at 1091, the plaintiffs alleged that their neighbors had harassed and intimidated them for more than nine years because of their national origin, which was East Indian.  The plaintiff filed claims against their neighbors under Section 3617 of the FHA and 42 U.S.C. § 1982, as well as numerous state law claims.  Id.  The defendants filed a motion to dismiss and argued that the plaintiffs had failed to state a claim under Section 3617 because the alleged conduct was unrelated to the plaintiffs' exercise of a right guaranteed by Sections 3603-3606 (i.e., a right to be free from discrimination in the sale or rental of real property).  In response, the plaintiffs argued that they were not required to allege a connection between the defendants' conduct and the sale or rental of real property, and that they could state a Section 3617 claim based solely upon the defendants' interference with their enjoyment of their home.  Egan, 93 F. Supp. 2d at 1092.  The court ultimately concluded that the plaintiffs had alleged a Section 3617 claim based upon the allegations in the complaint.  The court, however, declined to interpret Section 3617 so broadly as to cover any discriminatory conduct that interfered with an individual's enjoyment of his or her home.  Id. at 1093.  But the court's failure to adopt such a broad interpretation does not necessarily preclude plaintiffs from making their claim in this

11

case.

Defendant also relies on Lawrence v. Courtyards at Deerwood Association, Inc., 318 F. Supp. 2d 1133, 1144 (S.D. Fla. 2004). In that case, the plaintiffs were an African-American couple who sued their homeowners' association, property manager, and a neighbor, alleging that the homeowner association and the property manager allowed the neighbor to create a racially hostile housing environment in violation of Sections 3604 and 3617 of the FHA and the Civil Rights Act, 42 U.S.C. § 1982. Id. at 1136-38. The complaint alleged that the association addressed the complaints and problems of white homeowners, but refused to protect the plaintiffs' right to the quiet enjoyment of their property because they were African-American. Id. at 1138. The court in Lawrence ultimately found that the plaintiffs had failed to state a claim under Section 3617. Id. at 1145-46. Lawrence, however, is inapposite to this case. First, the court decided the issue on a motion for summary judgment, and not on a motion to dismiss or for judgment on the pleadings. The plaintiffs argued that because the defendants were aware of plaintiffs' harassment and did nothing to prevent or curtail it, defendants violated Section 3617. The court rejected the plaintiffs' claim for two reasons. First, the court noted that the plaintiffs had not provided any circuit law suggesting that the FHA imposed a duty on a homeowners' association or property manager to intervene in a neighbor-to-neighbor dispute. Id. at 1145. But the court also noted that an alleged failure to act could not sustain an interference claim under section 3617 "on the unfortunate facts presented here." Id. Second, the court rejected the plaintiffs' claim because it found that a reasonable jury could not find or infer that the defendants' actions as directed toward the plaintiffs were pervasive, severe, threatening or violent. Id. The court then recited the evidence in the case describing the various actions that the defendants took in responding to the plaintiffs' complaints. Thus, "[n]ot only do the facts fail to establish that the Defendants directed any threatening conduct toward the [plaintiffs], these facts do not present even a scintilla of evidence from which a reasonable jury could infer that the Defendants refused to intervene or stop [the neighbors] because of a racial animus." Lawrence, 318 F. Supp. 2d at 1145. Therefore, the court in Lawrence appeared to leave open the possibility that if there had been evidence that the homeowners'

association or property manager failed to act due to discriminatory motives, the plaintiffs would have been able to establish a Section 3617 claim.

Defendant here asks this court to conclude from these cases that Sections 3604(b) and 3617 do not impose a duty on the part of the owner or manager to prevent racial harassment by other tenants. Yet none of the cases that defendant cites provides compelling authority for this proposition. Each case must rest on its own facts.[5] As discussed above, there is little dispute that the courts have found that the FHA must be interpreted broadly. What little authority there is that addresses this topic, see, e.g., Neudecker, 351 F.3d 361; Lawrence, 318 F. Supp. 2d at 1145, leads this court to conclude that, in the context of a motion for judgment on the pleadings, plaintiffs' Section 3604(b) and 3617 claims under the FHA withstand defendant's arguments. Accordingly, defendant's Motion is DENIED as to plaintiffs' FHA claim.

## II.   FAILURE TO STATE A CLAIM UNDER THE CIVIL RIGHTS ACT, 42 U.S.C. § 1982

The Civil Rights Act of 1866 provides that all citizens have the right to inherit, purchase, lease, sell, hold, and convey property. 42 U.S.C. § 1982. Plaintiffs claim that defendants violated 42 U.S.C. Section 1982 by interfering with plaintiffs' right to hold property free from harassment or intimidation because of their race. (Complaint at ¶ 51). To state a claim under Section 1982, plaintiffs must allege with specificity facts sufficient to show that (1) the plaintiff is a racial minority; (2) the defendant intended to discriminate on the basis of race; and (3) the discrimination concerned activities addressed in section 1982. Lawrence, 318 F. Supp. 2d at 1150.

Defendant argues that even if a violation could be found under the Civil Rights Act for discriminatory conduct, plaintiffs must show that defendant intended to discriminate against plaintiffs, which plaintiffs have failed to do. Plaintiffs, however, allege that defendants ratified

---

[5] The court, in rejecting plaintiffs' hostile housing environment claim, also noted that based on the facts presented, the court was not inclined to recognize a cause of action under the FHA for a hostile housing environment. But even if the cause of action is cognizable under the FHA [citing, e.g., Dicenso, 96 F.3d at 1008; Honce, 1 F.3d at 1090], "summary judgment [was] appropriate because the evidence fail[ed] to establish discrimination." Lawrence, 318 F. Supp. 2d at 1146.

or acquiesced in the harassment and intimidation of the Martinez family, and that defendants had previously taken immediate, effective correction action when similarly situated white tenants of Meridian Apartments complained of harassment or intimidation by other tenants. (Complaint at ¶¶ 36, 37). Whether plaintiffs are able to present sufficient evidence of the foregoing is not before this Court at this time. The Court, as noted above, must construe the allegations of the Complaint in the light most favorable to plaintiffs. Accordingly, the Court finds that plaintiffs have sufficiently stated a claim under 42 U.S.C. Section 1982 and defendant's Motion is DENIED as to this claim.[6] See Egan, 93 F. Supp. 2d at 1093 (the analysis under Section 1982 should be the same as the analysis under the FHA).

### III.    FAILURE TO STATE A CLAIM UNDER CALIFORNIA'S FAIR EMPLOYMENT AND HOUSING ACT OR THE UNRUH CIVIL RIGHTS ACT

Plaintiffs' third and fourth claims in the Complaint charge defendants with violating the FEHA, in violation of California Government Code Sections 12927(c), 12955(a), 12955(k), and 12955.7 and the Unruh Act, in violation of California Civil Code Section 51 et seq. Plaintiffs allege that defendants engaged in discriminatory housing practices similar to the prohibited conduct in Section 3617 of the FHA, as well as discriminated against plaintiffs because of their race or color in the operation of the apartment building. (Complaint at ¶¶ 53, 55).

Defendant contends in its Motion that, similar to the FHA, no California case has interpreted the FEHA or the Unruh Act to impose an affirmative duty on an apartment manager or owner to prevent a hostile housing environment caused by tenant-on-tenant racial harassment. But claims under the FHA and FEHA are analyzed under the same standards. Walker v. City of Lakewood, 272 F.3d 1114, 1131 n.8 (9th Cir. 2001); see Egan, 93 F. Supp. 2d at 1094 (California courts have recognized that the Section 12955.7 of the FEHA is intended

---

[6] Defendant also relies on Lawrence, 318 F. Supp. 2d 1133, in support of this argument. As discussed above, however, the court in Lawrence rejected plaintiffs' civil rights claim based on the finding that there was no evidence to establish that the defendants tolerated or ratified the neighbors' harassment because of a discriminatory intent. Id. at 1150. Here, the parties are before the Court on a motion for judgment on the pleadings and the Court cannot speculate as to the evidence in the case.

to conform to the general requirements of the FHA). The Unruh Act, Civil Code Section 51, provides in relevant part:

> All persons within the jurisdiction of this state are free and equal, and no matter what their sex, color, religion, ancestry, national origin, or disability are entitled to the full and equal accommodations, advantages, privileges, or services in all business establishments of every kind whatsoever.

The Unruh Act is to be liberally construed. Beliveau, 873 F. Supp. at 1401. In Beliveau, the court denied the motion to dismiss and concluded that in the absence of any contrary authority from the California Supreme Court, both the policy of liberal construction and the plain language of the Unruh Act should permit plaintiff's sexual harassment claim to go forward. Id. Defendant relies on the Department of Fair Employment and Housing v. Franks, FEHC Dec. No. 93-09, 1993 WL 726831 (Cal. F.E.H.C.), a decision issued by the Fair Employment and Housing Commission ("Commission"). In Franks, the complainants alleged that the respondent, owner of the dwelling that complainants rented, had failed to prevent racially motivated harassment and threats against the complainants by the other tenants, and then evicted the complainants in retaliation for their complaints about the harassment. Franks, 1993 WL 726831, at *1. The Commission found that: "[n]either the FEHA nor the Unruh Act imposed upon a landlady a duty to prevent, investigate and/or remedy one tenant's harassment of another." Id. at *6. Moreover, the Commission noted that:

> There may be sound policy reasons not to impose the same duties on landlord as are imposed on employers. These flow from real differences between the landlord-tenant relationship and the employer-employee relationship. In the employment setting, employers have supervision and control over what their employees do and say during their work hours. Employers pay their employees, and in exchange receive a large measure of control over (and responsibility for) what their employees do on the job.

> Thus it is appropriate that an employer has the duty under the FEHA to train employees about sexual or racial harassment.[fn]]
>
> In contrast, tenants pay their landlords; landlord do not pay their tenants. Tenants pay their rent, and, in exchange, get a home, and all the privacy rights which that implies.[fn]  Landlords exercise relatively little control over what their tenants do or say, except as is directly connected to their use of the landlord's property.

Franks, 1993 WL 726831, at *6-7.  Thus, the Commission ultimately found no violation of Government Code Sections 12955(a) and (d) or the Unruh Act.  Id. at *7.  While the Commission's analysis of this issue has appeal, Franks does not constitute controlling authority for this Court. Moreover, as part of their claim under the FEHA, plaintiffs assert that defendants also violated California Government Code Section 12955.7, by "coercing, intimidating, threatening or interfering with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of rights guaranteed by the Fair Employment and Housing Act." (Complaint at ¶ 53(c)).  Whether plaintiffs are ultimately able to present evidence sufficient to establish a FEHA or Unruh Act claim remains to be seen.  Yet because the FEHA must be analyzed in the same manner as the FHA, and the Unruh Act must be construed broadly, defendant's Motion is DENIED as to these claims.

   IT IS SO ORDERED.

Dated:  December 12, 2007

                                         /s/
                                    JENNIFER T. LUM
                                    UNITED STATES MAGISTRATE JUDGE